**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and ARTHUR H. BUNTE, JR., trustee,  )<br><br>*Plaintiffs,*  )<br><br>v.  )<br><br>GREGORY STEPHENS, an individual; and SHERRY STEPHENS, an individual,  )<br><br>*Defendants.*  ) | Case No.15 C 10828<br><br>Judge Wood<br><br>Magistrate Judge Valdez |

**DEFENDANTS' ANSWER**

Defendants Gregory Stephens and Sherry Stephens, by their attorney and pursuant to the applicable court rules, answer the Complaint of Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") and Arthur H. Bunte, Jr., one of its present trustees, as follows:

**JURISDICTION AND VENUE**

1. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001, *et seq*., and under Ohio's Uniform Fraudulent Transfer Act, Ohio Rev. Code Ann. § 1336, *et seq*.

ANSWER: Admit.

2. This Court has jurisdiction over this action under sections 502(e), 502(f), and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c), and 28 U.S.C. §§ 1331 and

1

1367.

ANSWER: Admit.

3. Venue lies in this Court under sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Pension Fund is administered at its principal place of business in Rosemont, Illinois.

ANSWER: Admit.

## PARTIES

4. The Pension Fund is a multiemployer pension plan within the meaning of sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3).

ANSWER: Admit.

5. Plaintiff Arthur H. Bunte, Jr. is a present trustee and fiduciary of the Pension Fund within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor of the Pension Fund within the meaning of section 4001(a)(10) of ERISA, 29 U.S.C. § 1301(a)(10). The Trustees administer the Pension Fund at 9377 West Higgins Road, Rosemont, Illinois.

ANSWER: Admit.

6. Pursuant to sections 502(a)(3) and 4301(a)(1) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Trustees, by and through their designated trustee Arthur H. Bunte, Jr., are authorized to bring this action on behalf of the Pension Fund, its participants and beneficiaries for the purpose of collecting withdrawal liability.

ANSWER: Admit.

7. Defendant Gregory Stephens is an individual who resides in the State of

Florida.

ANSWER: Admit.

8. Defendant Sherry Stephens is an individual who resides in the State of Florida.

ANSWER: Admit.

9. During all relevant periods of time, Gregory Stephens and Sherry Stephens were married.

ANSWER: Admit.

## BACKGROUND INFORMATION

10. Locker Moving & Storage, Inc. ("Locker") is or was a corporation organized under the laws of the State of Ohio.

ANSWER: Admit.

11. During all relevant periods of time, Locker was bound by collective bargaining agreements with a certain Teamsters local union under which Locker was required to make contributions to the Pension Fund on behalf of certain of its employees.

ANSWER: Admit.

12. During all relevant periods of time, Gregory Stephens was the president of Locker, and he directly or indirectly owned at least 80% of the total combined voting power of all classes of outstanding stock entitled to vote or at least 80% of the total value of outstanding shares of all classes of stock of Locker.

ANSWER: Admit.

**A.     Locker's 2011 Partial Withdrawal Liability.**

13.     As a result of a decline in Locker's contributions to the Pension Fund, the Pension Fund determined that on December 31, 2011, Locker effected a "partial withdrawal" from the Pension Fund as defined in section 4205(a)(1) of ERISA, 29 U.S.C. § 1385(a)(1) (the "2011 Partial Withdrawal").

ANSWER:     Defendants lack information sufficient to admit or deny the date of determination and therefore deny.  Admit remainder.

14.     As a result of the 2011 Partial Withdrawal, the Pension Fund determined that Locker incurred withdrawal liability to the Pension Fund in the principal amount of $220,856.52, as determined under section 4201(b) of ERISA, 29 U.S.C. § 1381(b)  (the "2011 Partial Withdrawal Liability").

ANSWER:     Admit.

15.     On or about May 16, 2013, Locker received a notice and demand for payment of the 2011 Partial Withdrawal Liability issued by the Pension Fund  in accordance with sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1). The notice and attached invoices notified Locker that it was required to discharge its liability in a lump sum payment of $220,856.52 by June 1, 2013, or in monthly installments of $1,237.93 commencing on June 1, 2013.

ANSWER:     Admit.

16.     Locker remitted monthly payments to the Pension Fund for the months of June 2013 through December 2013 on the 2011 Partial Withdrawal Liability, but did not make any payments thereafter.

4

ANSWER: Admit.

17. On or about December 17, 2013, Locker received a notice from the Pension Fund pursuant to section 4219(c)(5)(A) of ERISA, 29 U.S.C. § 1399(c)(5)(A), advising that its withdrawal liability payments were past due, and which forewarned Locker of the consequences of its failure to pay the 2011 Partial Withdrawal Liability.

ANSWER: Admit.

18. Locker failed to make all of the 2011 Partial Withdrawal Liability payments in accordance with the schedule set forth by the Pension Fund.

ANSWER: Admit.

**B.  Locker's 2012 Partial Withdrawal Liability.**

19. As a result of a decline in Locker's contributions to the Pension Fund, the Pension Fund determined that on December 31, 2012, Locker effected a "partial withdrawal" from the Pension Fund as defined in section 4205(a)(1) of ERISA, 29 U.S.C. § 1385(a)(1), (the "2012 Partial Withdrawal").

ANSWER: Admit.

20. As a result of the 2012 Partial Withdrawal, the Pension Fund determined that Locker incurred withdrawal liability to the Pension Fund in the principal amount of $227,749.54, as determined under section 4201(b) of ERISA, 29 U.S.C. § 1381(b) (the "2012 Partial Withdrawal Liability").

ANSWER: Admit.

21. On or about December 6, 2013, Locker received a notice and demand for payment of the 2012 Partial Withdrawal Liability issued by the Pension Fund in accordance with sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1). The notice

demanded full payment of the entire amount of the withdrawal liability by December 15, 2013, pursuant to section 4219(c)(5)(B) of ERISA, 29 U.S.C. §1399(c)(5)(B), and Appendix E, § 5(e)(2) of the Pension Fund's Pension Plan. The amount demanded was $227,749.54, the balance owed at that time on the 2012 Partial Withdrawal Liability.

    ANSWER:    Admit.

22. Locker failed to make the 2012 Partial Withdrawal Liability payment to the Pension Fund.

    ANSWER:    Admit.

### C. Locker's 2013 Complete Withdrawal Liability.

23. The Pension Fund determined that on or about July 6, 2013, Locker permanently ceased to have an obligation to contribute to the Pension Fund and/or permanently ceased all covered operations, thereby effecting a "complete withdrawal" from the Pension Fund within the meaning of section 4203 of ERISA, 29 U.S.C. § 1383 (the "2013 Complete Withdrawal").

    ANSWER:    Admit permanent cessation effected a complete withdrawal.

24. As a result of the 2013 Complete Withdrawal, the Pension Fund determined that Locker incurred withdrawal liability to the Pension Fund in the principal amount of $76,486.98, as determined under section 4201(b) of ERISA, 29 U.S.C. § 1381(b) (the "2013 Complete Withdrawal Liability").

    ANSWER:    Admit.

25. On or about December 6, 2013, Locker received a notice and demand for payment of the 2013 Complete Withdrawal Liability issued by the Pension Fund in accordance with sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1). The notice

demanded full payment of the entire amount of the 2013 Complete Withdrawal Liability by December 15, 2013, pursuant to section 4219(c)(5)(B) of ERISA, 29 U.S.C. § 1399(c)(5)(B), and Appendix E, § 5(e)(2) of the Pension Fund's Pension Plan. The amount demanded was $76,486.98, the balance owed at that time on the 2013 Complete Withdrawal Liability.

    ANSWER:    Admit.

    26.    Locker failed to make the 2013 Complete Withdrawal Liability payment to the Pension Fund.

    ANSWER:    Admit.

**D.    The Pension Fund's Judgment Against Locker.**

    27.    On January 30, 2014, the Pension Fund filed suit against Locker in the United States District Court for the Northern District of Illinois in a case entitled *Central States, Southeast and Southwest Areas Pension Fund, et al. v. Locker Moving and Storage, Inc.*, Case No. 14 C 0667, to collect the 2011 Partial Withdrawal Liability, the 2012 Partial Withdrawal Liability, and the 2013 Complete Withdrawal Liability (collectively referred to as the "Assessments"), plus interest and statutory damages (the "Lawsuit").

    ANSWER:    Admit.

    28.    On August 19, 2014, a consent judgment was entered in the Lawsuit in favor of the Pension Fund and against Locker in the total amount of $641,887.63, plus post-judgment interest (the "Judgment").

    ANSWER:    Admit.

    29.    To date, the full amount of the Judgment remains due and owing to the Pension Fund.

    ANSWER:    Admit.

E. **Locker's Distribution of Monies to Gregory Stephens and Sherry Stephens.**

30. Gregory Stephens, as an owner and the president of Locker, was the individual responsible for authorizing any payments made by Locker.

ANSWER: Admit.

31. During the years 2009-2011, Gregory Stephens advanced monies to Locker in the total amount $223,000.00.

ANSWER: Denied he advanced monies but state that he loaned monies to Locker over the years to take the place of a line of credit closed by Locker's bank at the time.

32. To the extent Gregory Stephens advanced monies to Locker, the monies were capital contributions, because when the advances were made there were no contemporaneous instruments of indebtedness, no promissory notes, or any other indication that the advances were loans.

ANSWER: Deny.

33. In 2012-2014, Gregory Stephens caused Locker to repay the advances by transferring Locker's assets to either himself and/or to Sherry Stephens in the total amount of $308,567 (the "Locker Distributions").

ANSWER: Deny.

34. Upon information and belief, all of the Locker Distributions were made after Locker incurred the 2011 Partial Withdrawal Liability.

ANSWER: Deny.

35. Upon information and belief, Gregory Stephens and Sherry Stephens did not provide any consideration to Locker in exchange for the Locker Distributions.

8

ANSWER: Deny.

36. At the time, or as a result, of the Locker Distributions, Locker was left insolvent and lacked sufficient assets to pay its creditors, including the Withdrawal Liability owed to the Pension Fund.

ANSWER: Deny.

### COUNT I - UNDER MPPAA'S EVADE OR AVOID PROVISION

37. Plaintiffs reallege and incorporate by reference paragraphs 1-36 as and for paragraph 37 of Count I of this Complaint.

ANSWER: Defendants reallege and incorporate by reference paragraphs 1-34 as though fully set forth herein.

38. Section 4212(c) of ERISA, 29 U.S.C. § 1392(c), prohibits a transaction if a principal purpose of such transaction is to evade or avoid the payment of Assessments to the Pension Fund.

ANSWER: Admit.

39. Upon information and belief, a principal purpose behind the Locker Distributions was to evade or avoid the payment of the Withdrawal Liability owed by Locker to the Pension Fund.

ANSWER: Deny.

40. Under section 4212(c) of ERISA, 29 U.S.C. § 1392(c), the Locker Distributions may be disregarded and Gregory Stephens and Sherry Stephens may be held liable to the Pension Fund for all amounts transferred to them by Locker.

ANSWER: Deny.

**WHEREFORE**, Defendants pray that Count I be dismissed.

## COUNT II - **IMPROPER DISTRIBUTIONS**

41. Plaintiffs reallege and incorporate by reference paragraphs 1-36 as and for paragraph 41 of Count II of this Complaint.

ANSWER: Defendants reallege and incorporate by reference paragraphs 1-38 as though fully set forth herein.

42. This count is brought by the Pension Fund, as a creditor of Locker, for the collection of improper distributions by Locker to Gregory Stephens and Sherry Stephens.

ANSWER: Deny liability, admit suit brought by fund.

43. Upon information and belief, at the time of, or as a result of, the Locker Distributions, Locker became unable to pay its debts and/or became insolvent, and its inability to pay the Assessments owed to the Pension Fund was a direct and proximate result of the Locker Distributions.

ANSWER: Deny.

44. The Locker Distributions were an abuse of Locker's assets and corporate form. In abusing Locker's corporate form in this fashion, Gregory Stephens and Sherry Stephens are liable to the Pension Fund to the extent of the improper distributions.

ANSWER: Deny.

45. Section 502(a)(3)(b) and 4301(a) of ERISA, 29 U.S.C. §§ 1132(a)(3)(b) and 1451(a), authorize this Court to impose a constructive trust on the assets that were wrongfully

transferred or distributed by Locker to Gregory Stephens and Sherry Stephens, up to the amount of the Judgment for the benefit of the Pension Fund.

ANSWER: Deny.

**WHEREFORE**, Defendants pray that Count II be dismissed.

## COUNT III - UNDER OHIO'S UNIFORM FRAUDULENT TRANSFER ACT

46. Plaintiffs reallege and incorporate by reference paragraphs 1-36 as and for paragraph 46 of Count III of this Complaint.

ANSWER: Defendants reallege and incorporate by reference paragraphs 1-45 as though fully set forth herein.

47. This count is brought by the Pension Fund, as a creditor of Locker, under Ohio's Uniform Fraudulent Transfer Act, Ohio Rev. Code Ann. § 1336, *et seq.*, for the collection of improper distributions by Locker to Gregory Stephens and Sherry Stephens.

ANSWER: Deny liability, admit count is brought as pleaded.

48. The Locker Distributions were made and entered into with the intent to hinder, delay, or defraud Locker's creditors.

ANSWER: Deny.

49. Alternatively, the Locker Distributions were made without Locker receiving reasonably equivalent value and Locker believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

ANSWER: Deny.

50. At the time of, or as a result of, the Locker Distributions, Locker was left insolvent and lacked sufficient assets to pay its creditors, such as the Pension Fund.

11

ANSWER: Deny.

51. The Locker Distributions were fraudulent as to the Pension Fund who was a creditor of Locker before and after the Locker Distributions were made.

ANSWER: Deny.

**WHEREFORE**, Defendants pray that Count III be dismissed.

Respectfully submitted,

*/s/Burr E. Anderson*
Attorney for Defendants
Gregory Stephens and
Sherry Stephens

Burr E. Anderson
Anderson Law Offices PC
223 W Jackson Blvd., Suite 1016
Chicago, Illinois 60606
(312) 957-1100
 Attorney No. 3121649